## ISAAC R. HITT, ET AL

*v.*

## THE STATE OF ILLINOIS.

*Opinion filed December 30, 1898.*

*Separate opinion by W. S. Louden, Commissioner.*

FEES AND SALARIES—*no extra compensation to be granted public officer after service rendered on contract.* Under Section 19 of Article 4 of the Constitution of 1870, which provides, "That the General Assembly shall never grant or authorize extra compensation fee or allowance to any public officer, agent, servant or contractor after service has been rendered or a contract made; nor authorize the payment of any claim or part thereof hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void; provided the General Assembly shall make appropriations for expenditures incurred in suppressing insurrection or repelling invasion," an agreement made with a party whereby he is to attempt to obtain a settlement of war claims owing the State by the United States Government and look to the legislature for his pay, is void.

The claimants in this case, Isaac R. Hitt, Mary S. Logan, widow of John A. Logan, deceased, and Catherine

Wiltshire, widow of W. W. Wiltshire, deceased, claim an amount due from the State of Illinois for alleged services rendered by authority averred by petitioners to have been given Isaac R. Hitt by Governors John L. Beveridge and Shelby M. Cullom to represent the State of Illinois in any and all claims of the State of Illinois against the United States and press them to a settlement.

This alleged authority was granted to Isaac R. Hitt by Governors Beveridge and Cullom with the express understanding that the said Hitt was to look to the Legislature of the State of Illinois for compensation for services.

The petition avers that Hitt employed General John A. Logan and Hon. W. W. Wiltshire to assist him in representing the State in these claims; that the services of General John A. Logan were rendered during the years of 1877, 1878 and 1879 while he was not in the employ of the United States Government; that the understanding between said Hitt, Logan and Wiltshire was that they should share equal in any compensation there should be allowed by the State of Illinois for services rendered; that through the efforts of said Hitt, Logan and Wiltshire, an act of Congress was passed in 1891 refunding to the State of Illinois, the sum of $974,569.63.

At the session of the 39th General Assembly of the State of Illinois, these claimants presented their claim and a bill allowing the claimants the sum of $30,000 was passed by the Senate and a similar bill for like amount was passed by the Senate of the 40th General Assembly. At the 40th General Assembly, a resolution was adopted by the House of Representatives referring the bill to this Commission.

At the August session, 1897, of this Commission, these claimants by leave of this Commission, filed their amended petition.

The State filed four pleas to this claim; the fourth which is known as the two years statute of limitations,

to which fourth plea, a demurrer was filed by claimant's attorneys. The State also set up and relied upon as a complete defense to this claim, section nineteen of article four of the Constitution of 1870.

The opinion of the Commission is, that the two years statute of limitations does not apply in this case; and the demurrer is therefore sustained.

As to the other defense relied upon by the State, section nineteen of article four of the Constitution of 1870, which provides, "That the General Assembly shall never grant or authorize extra compensation or allowance to any public officer, agent, servant or contractor after service has been rendered or a contract made; nor authorize the payment of any claim or part thereof hereafter created against the State under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void; provided the General Assembly shall make appropriations for expenditures incurred in suppressing insurrection or repelling invasion."

In the opinion of the Commission, this is a good and complete defense against the claim; and upon this constitutional provision alone, the claim is, by this Commission, denied.

The testimony of the Governors making the appointment is all to the effect, that they knew that they had no authority to bind the State, nor is there any evidence that they attempted to do so. Hitt in his testimony says, the understanding was that he was to look to the Legislature for payment.

Governor Beveridge in his testimony says, "I requested Hitt to look after any and all claims of the State of Illinois against the United States Government and to press them to a settlement with the understanding that Hitt was to look to the Legislature of the State for compensation of services." He also says, "I know of no special authority for the appointment of Hitt."

Cullom in his appointment says, "That this authority is given with the express understanding that no liability

will be created under it against the State for costs or expenses of any kind."

The judgment of the Commission is that this claim be denied and the bill dismissed; but it is also decided by the Commission that each Commissioner should prepare an opinion as to the finding of the facts in the evidence so that if the claimants desire that they may prosecute their claim before the Legislature.

*The first evidence to be considered is Hitt's appointment as State agent as alleged in the claimants' petition.* Taking the testimony first of Governor Beveridge, interrogatory third: "If you at any time during said term employed Isaac R. Hitt to act on behalf of the State of Illinois to prosecute and obtain from the government of the United States, certain war claims due the State and principally the claim known as the direct tax claim, if so, please state the character of said employment and the terms thereof as nearly as you can?" Answer to the third interrogatory: "In answer in part to the interrogatory I offer a copy of a letter dated June 8, 1895, which letter was written by me, to be attached to this deposition as 'Exhibit A.' According to my best recollection as Governor of Illinois, I requested Isaac R. Hitt, who had been appointed agent of the State of Illinois in swamp land matters, to press to settlement all claims of Illinois against the United States of every kind and nature and gave him written authority therefor, with the understanding that he was to meet his own expenses and look to the Legislature of the State of Illinois for his compensation for money expended in services rendered in this behalf." The letter referred to reads as follows:

"CHICAGO, ILLINOIS, June 8, 1895.

I. R. Hitt, Esq.,
        Chicago, Ill.,
Dear Sir:—

In pursuance of a joint resolution of the Illinois Legislature passed during my gubernatorial term, I, as Governor of the State, appointed you State agent to represent

the interest of the State and Counties under the swamp land grant.

Hon. H. D. Cook, of McLean county, formerly representing the State at Washington in the settlement of war claims having resigned, I requested you to look after any and all claims of the State of Illinois against the United States Government and to press them to a settlement with the understanding that you were to look to the Legislature of the State for compensation for your services.

Yours truly,

(Signed.) JOHN L. BEVERIDGE."

Certified copy of commission issued by Governor Cullom was dated July 20, 1880, authorizing Isaac R. Hitt to appear as agent or attorney for the State of Illinois "in any of the departments of the United States government, to secure the allowance and payment of any sums that may be due and owing to the State of Illinois on account of expenses, costs or charges incurred by the State in the war of Rebellion. This authority supercedes that given to R. G. and E. C. Ingersoll, July 2, 1878, and which is now resigned by Hon. R. G. Ingersoll, surviving member of the firm. This authority is given with the express understanding that no liability will be created against the State for costs and expenses of any kind whatsoever.

Very respectfully,

(Signed.) S. M. CULLOM, *Governor."*

Hitt in his testimony says, "that the Beveridge and Cullom commission cover the direct tax. And Beveridge also states in a general way, I must depend upon the Legislature. The Cullom commission was some time in 1880."

The next question to be considered is, *"Was there any money recovered by the State from the United States government?"* The three following receipts were introduced in evidence, viz:

First: Date November 29, 1890, for the sum of $1,-532.92, from Governor Fifer, "From appropriation made

by the U. S. government refunding to State expenses incurred in raising volunteers, Act July 27, 1861."

(Signed.)    CHARLES BECKER, *State Treasurer.*

Second: Date April 23, 1891, for the sum of $956,-750.69, received of Governor Fifer, "Refunding direct tax, levied by general government act of Congress, August 5, 1861."

(Signed.)    E. S. WILSON, *State Treasurer.*

Third: Date March 30, 1893. "Received of John P. Altgeld, Governor of Illinois, seventeen thousand eight hundred seven and 94-100 dollars, being the amount of direct tax levied by the act of August 5, 1861, found due the State of Illinois on settlement with government of United States."

(Signed.)    RUFUS N. RAMSAY, *State Treasurer.*

The next question to be considered is, *"Was the money recovered through the efforts of Isaac R. Hitt, John A. Logan and W. W. Wiltshire?"* Isaac R. Hitt's testimony: "The work done by me in the collection of the direct tax was begun in 1877. At that time, I employed Logan and Wiltshire to assist me in this claim. In 1877, Logan, Wiltshire and myself went to the war department and to the treasury department to obtain the data. We consulted at that time and many times afterwards during 1878 with Ex-Governor Samuel J. Crawford of Kansas, who was agent for the State, Prescott and Earl, agents for South Carolina, Wailes, agent for State of Maryland, Mullen, agent for California, Belknap, agent of Iowa, Lowe, of Iowa, and Garland, of Arkansas. We frequently consulted with the Attorney General's office, also Commissioner Raum of the Internal Revenue department and with the Secretary of the Treasury.

We discussed many methods of proceedure but finally decided that our best claim was through Congress. Nearly every Congress from 1880 until 1888 had a measure before it relating to this claim; but no final action was taken. I was present at every session of Congress from 1876 down to this date. Have done all I could do as

agent for the State in urging Congress to adjust this claim. From 1876 to 1882, the agents of the several States worked to this same end and without concerted action.

I think in 1882, several state agents formed an association and from that time to the passage of the act of March 2, 1891, the organization was kept up, sent letters to governors of all states and printed circulars, disseminated information by letters and otherwise; obtained resolutions from the State legislators instructing members of Congress to vote for the refunding of the direct tax.

Judge Wiltshire and I attended all meetings of the association, paid our proportion of expense and appeared before committees in Congress from time to time.

General Logan's connection with this bill was during the years of 1877 and 1878 and early in 1879, prior to his election to the United States Senate.

During the years they worked together neither Logan or Wiltshire were in the service of the United States in any capacity. Both did faithful work; and I promised them that whatever the Legislature of the State of Illinois might give me for services as agent of the State, I would give them each one third of the same. That agreement was verbal, never reduced it to writing.

I know that both Logan and Wiltshire paid out money in connection with their services. Wiltshire assisted me on this claim to the date of his death.

My expenses on account of the direct tax has been over $5,000 between 1876 and 1891 for printing, clerk hire, stenographer, telegraph and postage bill, expenses to the association, traveling expenses and expenses in Washington. I charged one-third of my expense up to the direct tax claim.

I spent the best part of my life working for the State and have never received any benefit from it.

I think the first bill to refund the direct tax was introduced in 1878 or 1880, might have been as late as 1881 or 1883."

The evidence of Mary S. Logan is: "My husband was attorney for the State of Illinois from March, 1877, to March 4, 1879. He was employed by Mr. Hitt while associated with W. W. Wiltshire in the practice of law in Washington. He and Judge Wiltshire were to receive one-third of whatever compensation the Illinois Legislature should allow, whenever any of the claims should be paid by the government.

The services embraced the prosecution of all claims of the State against the government. I know this by being present on various occasions when the agreement and the nature of the claims were discussed.

General Logan was not connected with any services of the United States in any character whatever between the years of March 4, 1877, and 1878. He was in Washington continuously during the sessions of Congress and appeared before committees of both Houses and before the departments of claims.

He and Judge Wiltshire worked diligently at these claims daily during the period of two years from March, 1877, and March, 1879.

Mr. Logan's share of expenses in the prosecution of these claims was $714. I know this because as his administratrix, I paid to Mary H. Brady that amount which he had borrowed from her to defray these expenses.

The agreement between Hitt, Logan and Wiltshire related to all claims which Hitt was authorized to prosecute against the government from the State of Illinois.

When my husband re-entered the Senate in 1879, he turned all his legal business to Judge Wiltshire and did not participate in the prosecution of the claims thereafter."

The evidence of Governor Samuel J. Crawford of Kansas, is: "I am a lawyer, was employed by the State of Kansas, March 6, 1877, to prosecute claims against the United States, which employment continued until the direct tax was paid by the United States.

The services rendered in the direct tax claim consisted in preparing the case first, for presentation to the treasury department and afterwards to Congress.

Frequent meetings were held at which the attorneys of other states were present including the agent and attorneys of the State of Illinois who assisted in every way.

The attorneys for Illinois were Isaac R. Hitt, John A. Logan and W. W. Wiltshire.

The question of refunding the direct tax to states that had paid their quota was presented to the First Comptroller of the Treasury and the Comptroller of the Currency and the Secretary of the Treasury.

The attorneys, including those representing Illinois, took the position that it was the duty of the government either to collect the tax from the delinquent states or to refund it to those which had paid.

This question was submitted and discussed by them before the officials of the treasury department and the secretary of the treasury in a printed brief.

This work was done mainly by the representatives of South Carolina, Ohio, Indiana, Illinois, Kansas, Arkansas, Maryland, Iowa and Pennsylvania.

I acted with attorneys for the State of Illinois, Hitt, Logan and Wiltshire from 1877 until the claim was paid.

Logan began in 1877 and retired in 1879. Wiltshire continued until his death.

The foundation for the collection of this direct tax was ready long before 1885.

I know that Logan, Wiltshire and Hitt represented Illinois before the departments of the principal committees in Congress. They did their duty in presenting and prosecuting the refunding tax act and they helped to secure the State of Illinois about nine hundred thousand dollars and they should be paid for their services."

I am of the opinion that from the evidence, the finding of the facts by this Commission should be:

First: That Isaac R. Hitt labored under the impres-

sion that he was the authorized agent under the appointments of Governors Beveridge and Cullom to represent the State of Illinois in securing to the State any claims due it from the general government.

Second.    That Hitt employed Logan and Wiltshire to assist him in prosecuting these claims of the State of Illinois against the United States government.

Third.    That Hitt, Logan and Wiltshire performed services that were valuable to the State of Illinois in securing the refunding of $956,760.69 and also $17,807.94 levied by the general government against the State of Illinois by the act of Congress, August 5, 1861.